UNITED STATES *v.* FUCHS SHOE CORPORATION (No. 4765)[1]

[1] C. A. D. 547.

United States Court of Customs and Patent Appeals, December 30, 1953

*Warren E. Burger*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for appellee.

[Oral argument October 6, 1953, by Mr. FitzGibbon and Mr. Allerton deO. Tompkins]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and JACKSON (retired), Associate Judges

WORLEY, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, First Division, rendered pursuant to its decision, C. D. 1466, sustaining the protests of the importer and holding certain footwear to be dutiable at 10 per centum ad valorem under paragraph 1530 (e) of the Tariff Act of 1930, as modified by the Trade Agreement with Mexico, 78 Treas. Dec. 190, T. D. 50797. The goods were assessed by the collector at 20 per centum ad valorem under the provisions of paragraph 1530 (e) of the Tariff Act of 1930 which reads as follows:

Par. 1530.

\*   \*   \*   \*   \*   \*   \*

(e) Boots, shoes, or other footwear (including athletic or sporting boots and shoes), made wholly or in chief value of leather, not specially provided for, 20 per centum ad valorem: * * *

The modification of that paragraph is as follows:

Par. 1530 (e). Boots, shoes, or other footwear (including athletic or sporting boots and shoes), wholly or in chief value of leather, not specially provided for:
Huaraches_____ 10% ad valorem

During the course of the proceedings in the court below, at the request of the importer the record in the case of *United States* v. *Weigert-Dagen, et al.*, 39 C. C. P. A. (Customs) 58, C. A. D. 464, was incorporated in the case before us. In addition, there was introduced in evidence four exhibits numbered 1 to 4, inclusive, which, as stipulated by counsel for both parties, correspond in all material respects to Exhibits 5, 10, 13, and 6, respectively, involved in the *Weigert-Dagen* case, *supra*.

Five protests, which were consolidated for trial in the court below, are involved here.

The importer, appellee herein, takes the position that in the *Weigert-Dagen* case, *supra*, the trial court correctly held that certain items of footwear were properly classifiable as huaraches but that when, upon appeal, this court reversed but did not remand that judgment, such action precluded a showing by the importer that the merchandise there involved met the definition adopted by this court. The importer seeks here, as he did below, to show that the instant merchandise comes within the definition adopted by us in the *Weigert-Dagen* case, *supra*.

In that case this court found that the term "huaraches" was ambiguous and also found such a sharp conflict in testimony, even among witnesses called by the same party, as to conclude that the word possessed no common or commercial meaning. In an effort to determine the correct meaning of the term, reference was made to certain language involving merchandise similar to that at bar, as found in the Digest of Trade Data which was supplied by the United States Tariff Commission to the negotiators of the trade agreement prior to and during the negotiations. That language is as follows:

Huaraches are leather-soled sandals having woven-leather uppers laced to the insole. The insole is machine-stitched to the outsole, and the heel is nailed on. They are used principally by women and girls for beach and casual summer wear.

As previously stated, that definition was held by us to reflect the intent of the representatives of the two governments in describing huaraches and it appears to be acceptable to the parties in this controversy.

The Government offered no testimony below but took the position there, as well as here, that the stipulation entered into by both parties that the exhibits in the *Weigert-Dagen* case, *supra*, and those now before us being "the same in all material respects," is sufficient to dispose of this appeal adversely to the importer as being *stare decisis*.

The importer, in attempting to prove that the involved merchandise came within the definition, called a single witness; namely, William Fuchs who had also testified in the *Weigert-Dagen* case, *supra*. His testimony in the instant case was to the effect that the exhibits responded to the terms of the definition, including "woven-leather uppers," and were also used principally by women and girls for beach and casual wear. Thereupon the trial court held that the involved imports were huaraches.

While we believe that his testimony, standing alone, might have been sufficient to bring the merchandise within the adopted definition, it is clear that the exhibits themselves do not support that conclusion.

The four samples of the merchandise at bar may be described as follows: Exhibits 1, 2, and 4, which are similar in all material respects, appear to be casual or sport shoes. The toe portion, or vamp, of each exhibit consists of a solid piece of leather laced by narrow leather thongs to the insole which, in turn, is machine-stitched to the outsole. Exhibit 3 is a sport shoe, the upper of which is also a solid piece of leather except at uniformly spaced points where slots are made to accommodate the insertion of narrow leather strips laced therethrough parallel to each other; the strips in turn, are laced through the insole and the insole is machine-stitched to the outsole. That shoe, like Exhibits 2 and 4, has a solid leather closed back quarter, or counter, which is machine-stitched to the sole. There is, in addition, a buckle strap designed to extend over the instep of the wearer. The heels, in all of the exhibits before us, are nailed on.

The importer argues that restriction of the term "huaraches" to only those items of footwear that have *wholly woven* uppers is to ignore all of the definitions and other evidence before us. We do not think, however, that the evidence of record justifies such a conclusion.

In our opinion, the language "Huaraches are leather-soled sandals having woven-leather uppers laced to the insole. * * *" is so clear in meaning as to preclude a holding that the instant merchandise comes within that definition. We believe that had the negotiators of the trade agreement, presumably experienced in the language of commerce, intended huaraches to be less than *wholly* woven, they would undoubtedly have said "woven in whole or in part," or employed some other suitable language.

It is to be noted that all of the testimony and other evidence clearly establish that a woven upper is an essential characteristic of huaraches. If the definition were so qualified as to satisfy the contention of the importer, it is not difficult to visualize footwear, the vamp consisting of a solid piece of leather attached to the insole by such a minute degree of weaving as to destroy one of the major characteristics of huaraches and thereby nullify that portion of the definition relating to "woven-leather uppers."

Here, since none of the exhibits have wholly woven uppers, they are not eligible for classification as huaraches.

The judgment of the Customs Court is *reversed*.

O'CONNELL, Judge, dissents.

WILLIAM P. COLE, JR., Judge, having participated below, disqualified himself to sit in this case and JACKSON, Judge, retired, was recalled to participate herein.